DELLA ISNARD, *Appellee*, v. THE EDGAR ZINC COMPANY, *Appellant*.

No. 16,335.

SYLLABUS BY THE COURT.

1. INSTRUCTIONS—*Exceptions Not Sufficiently Specific.* Where instructions are given to a jury in numerous paragraphs involving several propositions, and the only exception to any or the whole of such instructions is the following: "To each and every instruction given by the court to the jury adverse to the defendant, and to each and every part thereof, and to the instructions as a whole, the defendant at the time duly excepted and excepts"; *held*, that this exception amounts only to a general exception, and is insufficient to challenge the attention to any specific paragraph, and insufficient to bring to the consideration of this court any separate paragraph, and will not avail as an exception unless the whole charge is erroneous or unless the charge in its general scope or meaning is erroneous.

2. NEGLIGENCE—*Failure to Furnish Safe Place to Work—Personal Injury—Employee—Independent Contractor.* Where the owner of a building contracts with another to make therein condensers and tiling, at a stipulated price per hundred for the condensers made and a stipulated price per hundred pounds for tiling made, the owner to furnish the building, machinery, tools, molds and all material for the making of such articles, which are to be made according to the specifications of the owner, the other party to the contract to do the work and employ such assistants as he may need, to be paid by him out of such gross price, but to have no control over the building or place where the work is to be done, *held*, that the owner is

responsible to the next of kin if the building is blown up and
the life of the contractor is lost through the negligence of the
owner, and this whether the deceased be regarded as having
been an independent contractor or an employee of the owner.

Appeal from Montgomery district court; THOMAS J.
FLANNELLY, judge. Opinion filed February 12, 1910.
Affirmed.

*O. P. Ergenbright*, for the appellant; *Stanford &
Stanford*, of counsel.

*S. D. Bishop, A. C. Mitchell*, and *T. E. Wagstaff*, for
the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant was engaged in 1902, at
Cherryvale, Kan., in the smelting of zinc from ores, and
employed in and about the business natural gas, owned
and operated its own gas plant, and had a number of
accessory enterprises and a number of buildings for
different parts of its work. It appears from the evi-
dence that part of this business was manufacturing
condensers and tile, and that it had a building for that
special purpose. The building was one story high
above the basement, which was five and one-half or six
feet deep, and the building was about sixty-five by one
hundred feet in dimensions.

Joseph Isnard, the husband of the appellee, at the
time of the accident which resulted in his death was
employed by the appellant to make condensers and tile.
He was paid by the piece for making the condensers
and by the hundred feet for making tile. The material,
molds and tools to do the work were furnished him, and
the place in which to work. He employed such assist-
ants as he needed, and paid the assistants out of the
price that he was paid for the product. It appears that
he furnished only the manual labor.

In 1902 the appellant had laid a gas pipe, which ran
about one foot below the surface, from some of its gas

works across the site where the "condenser house" (as the building is called where the condensers and tile are made) was afterward built, about the year 1905. It seems that the site of the condenser house, after the laying of the pipe, had been buried with cinders and ashes, and perhaps clay and earth, so that although the basement, or cellar, had been excavated four or five feet the gas pipe was still about one foot below the surface, or floor, of the cellar.

On the morning of September 27, 1906, it was discovered that water was escaping from a hydrant in the condenser room, and had flooded the floor thereof to the depth of from one to three and one-half inches, and that the water was melting down the condensers that had been made and placed on the floor. To remove the water a large number of holes were bored through the floor, through which the water flowed into the basement, and from thence escaped through a drainpipe. The water falling upon the dirt floor of the cellar of course saturated it. Some workmen were sent to the basement to fix some steam pipes which were immediately under the floor covering the basement. One of the workmen carried a torch, and as he started to enter the basement through a manhole gas was ignited and an explosion occurred, which demolished the building, killing some workmen and so injuring Isnard that he died the following day.

After the explosion it was discovered that the gas pipe running under the building had rusted through; that the gas did not escape so long as the earth and clay above it were hard and compact, but that it immediately escaped upon the softening of the earth and clay by the water. Before the erection of this building the appellant had discovered that its pipes, laid at about the time this pipe was laid and in substantially the same kind of soil, were being injured by rust, and undertook to encase all of its pipes with cement to preserve them. But for some reason the superintendent

or engineer of the appellant, who was attending to that business, forgot and overlooked the fact that the pipe in question had been laid, and it was not encased in cement. He testified that if he had known the pipe was there he would have torn it out and would not have erected the building over it.

The petition of the appellee, as next of kin, sufficiently alleged a cause of action on the ground of negligence of the appellant. The answer was a general denial and a plea of contributory negligence on the part of the deceased. The reply was a general denial. The case was tried to a jury, and judgment was rendered upon the verdict in favor of the appellee for $10,000 damages.

The evidence shows the facts as above recited, without contradiction. It is contended, however, by the appellant that under the evidence Isnard was not an employee of the company, but was an independent contractor.

The only exception taken on the trial to the instructions was the following:

"To each and every instruction given by the court to the jury adverse to the defendant, and to each and every part thereof, and to the instructions as a whole, the defendant at the time duly excepted and excepts."

This exception does not direct the attention of the court to any particular paragraph of the instructions, but runs to the instructions as a whole. So far as the exception attempts to refer to any portion of the instructions it leaves the court to surmise what is meant by "adverse to the defendant." The appellant had not presented its view of the law by any requests to the court, nor had a finding of fact been requested relating to the contract between the appellant and the deceased. Yet this seems to be the principal contention here, and we can not presume that this indefinite, general exception, made to an instruction upon several propositions of law in several paragraphs, brought this question to

the attention of the court. (See *Young v. Youngman,* 45 Kan. 65; *Bard v. Elston,* 31 Kan. 274; *Fleming v. Latham,* 48 Kan. 773; *Wheeler v. Joy,* 15 Kan. 389.)

The assumption of the court in its instructions that Isnard was a servant of the appellant seems to be in accord with *Nyback v. Champagne Lumber Co.,* 109 Fed. 732. In the syllabus of that case it was said:

"Defendant, which owned and operated a sawmill, contracted with a third person to work up the slabs into lath and pickets, using machines in the mill which were run, kept in order and lighted by defendant. Defendant owned the products, paid the wages of the workmen employed by such person, and paid him the remainder, if any, due, computed at a stipulated price per 1000 for the lath and pickets made. *Held,* that such person was not an independent contractor, but a servant of defendant, put in charge of particular machines, and paid upon the terms stated, and that whatever duty there was to instruct an inexperienced workman employed in the operation of such machines as to the dangers of the employment remained a duty of defendant."

The only distinction apparent between that case and the case at bar is that the lumber company paid the assistants employed by its employee, who was putting out lath and pickets by the hundred, and paid whatever remained at so much per hundred to such employee. In this case the appellant paid the deceased for the condensers and the tile by the piece or by weight, and the deceased distributed the portion thereof due to the assistants. The determining feature upon which that case was decided is the same as in this—that the company furnished the machine, the tools, the material and the place to work, and it was therein held that the company was responsible for keeping the machine in proper condition to work. The principle applies as well in this case to the keeping of the place where the work is to be done in safe condition for the workmen to work.

It is to be observed that the deceased in this case had no control of the manner of doing the work, but did it

49—81 KAN.

according to specifications furnished by the appellant, with the material and in molds and with tools furnished by the appellant; also in a room furnished by the appellant, which was kept by it for drying the condensers and tiling after having passed through his hands. The evidence certainly does not show that he had any control over the building, but tends to show directly the contrary; that he and such help as he saw fit to employ simply did the manual labor of making the condensers and the tiling, in the molds furnished by the appellant. The ownership and control of the building, machinery and all the appurtenances involves responsibility for keeping them in condition so as not to endanger the safety of those lawfully therein. (See *Barclay v. Puget Sound Lumber Co.*, 48 Wash. 241; *Neimeyer v. Weyerhaueser*, 95 Iowa, 497.)

Even as to the employees of a contractor, and of course as to the contractor himself, the principle seems to be that where the owner undertakes to furnish machinery or a place to work, and has control of such machinery or such place, he is responsible for any damage that occurs through his negligence to furnish proper machinery or a safe place to work. (See *Johnson v. Spear*, 76 Mich. 139.) The syllabus to the Michigan case, as reported in 15 Am. St. Rep. 298, reads:

"Where the owner furnishes machinery to a contractor while work is being done upon his premises, and injury results through his fault in not keeping it in suitable and safe condition, he is liable to any servant of the contractor for an injury resulting to him from the defects therein, and his liability arises out of his obligation to provide safe appliances for the contractor to use, and to keep his premises in safe condition, independent of any contract provision to that effect."

Again, in *Coughtry v. Globe Woolen Co.*, 56 N. Y. 124, it was said:

"O. & M. contracted with defendant to put a cornice on its mill, any scaffolding required for that purpose to be erected free of cost to them. Plaintiff's intestate, a

workman in the employ of O. & M. while engaged in
the work, was killed by the fall of a scaffold erected by
defendant for that purpose.   In an action to recover
damages plaintiff was nonsuited, upon the ground that
defendant owed no duty to deceased in respect to the
construction of the scaffold.  *Held,* error; that, the scaf-
fold being erected by defendant upon its own premises
for the express purpose of accommodating the work-
men, a duty was imposed upon it toward them to use
proper diligence in constructing and maintaining the
structure; and that this duty existed, independently of
the contract." (Syllabus.)

Whether the court in its assumption that the de-
ceased was an employee of the appellant was techni-
cally correct or not we do not deem it necessary to de-
cide.   The obligation of the appellant to furnish a safe
place for the deceased and his assistants to work was
the same whether the deceased be regarded as an inde-
pendent contractor or as an employee.

The question as to the negligence of the appellant
was not submitted directly to the jury, but under the
instructions the general verdict in favor of the appel-
lee necessarily amounts to a finding of negligence on the
part of the appellant which resulted in the injury to
the deceased, and we may say that there is abundant
evidence to support such finding.

We have examined the other questions presented and
find no error therein.   The judgment is affirmed.