No. 45,759

VIRGIL HUXOL, *Appellee,* v. E. L. NICKELL, d/b/a NICKELL CON-
STRUCTION COMPANY, *Appellant,* and AL M. ROME, d/b/a AL M.
ROME DITCHING SERVICE, *Appellee.*

(473 P. 2d 90)

Opinion filed
July 17, 1970.

*Jerry M. Ward,* of Hampton & Ward, of Great Bend, argued the cause, and
*Thomas C. Boone,* of Hays, was with him on the brief for the appellant.

*Norbert R. Dreiling,* of Dreiling & Bieker, of Hays, argued the cause and
was on the brief for the appellee Virgil Huxol.

*Turner & Balloun,* Chartered, of Great Bend, and *Driscoll & Driscoll,* of
Russell, were on the brief for the appellee Al M. Rome, d/b/a Al M. Rome
Ditching Service.

The opinion of the court was delivered by

HARMAN, C.: This is an action for damages for personal injuries sustained by plaintiff Virgil Huxol as a result of falling into a hole on the Fort Hays Kansas State College campus. Plaintiff named as defendants a general contractor, E. L. Nickell, and a subcontractor, Al M. Rome, alleging negligence on the part of each. A jury trial resulted in a verdict for plaintiff against defendant Nickell for damages in the sum of $50,000. An answer to a special question absolved defendant Rome of negligence causing the fall. Nickell has appealed.

Plaintiff was a night watchman employed by the college for six years prior to his injury April 3, 1967. Defendant Nickell under state contract commenced construction of a power plant on the college campus in January, 1967. The power plant was located on the south edge of the campus directly south of a new library building. The library had been completed but on April 3, 1967, was not yet occupied. The area surrounding it had been cleared of debris, was level but had not been seeded. There were no sidewalks on the west side of the building. A large underground heat tunnel was to be constructed north from the power plant along the west side of the library and east from the power plant to the street. Excavation of the tunnel was being done by Rome, under subcontract with Nickell.

On April 3, 1967, Rome's employees were excavating the main heat tunnel north from the power plant. This excavation was in a tennis court area and was between 100 and 200 feet south of the library. A large tunnel had already been dug eastward. There were wire barricades and warning lights on these excavations at night.

On the afternoon of April 3, 1967, a Rome employee received orders from Nickell's foreman to jump ahead approximately 200 feet north at the main excavation and dig an isolated hole with a backhoe near the west side of the library, the purpose being to avoid damage to underground water lines which otherwise might result if the heavier caterpillar equipment used in the main excavation were employed. The Rome employee complied with this direction. He dug a hole twelve feet long, eight feet wide and between seven and eight feet deep. He moved the dirt taken out of the hole to a pile about fifty or seventy-five feet southwest of the hole. No dirt was piled either north or south of the hole. This employee left

the area at 5:00 p. m. at which time there were no barricades, wires or lights erected around the hole. The area was one used by many students.

Plaintiff, who worked from 6:00 p. m. to 1:00 a. m., had been given a key to the new library and had checked it in his rounds for four nights prior to. April 3, 1967. His duties included checking the doors of the library, checking the windows from the outside to see they were locked and seeing that lights were turned off inside the building. The building had many windows. He was aware of the excavation going on south in the tennis court area. On April 3 he reported for work at 6:00 p. m. and made his first round during daylight hours. On this tour he checked the north front doors of the library, but did not go around the building and was not aware of the hole on the west side. About 10:10 that night he checked the north doors of the library, then started around the building using a two-cell flashlight to check the windows on the two floors. At the northwest corner of the building he shone his flashlight southward ahead of him to where an air-conditioner was located. The way was clear and he could see where he was going. The light showed the area was safe and plaintiff went ahead. He was not facing the building but was walking forward at an angle at a normal speed. It was dark but there was some light reflection from the building and he did not look at the ground again. He demonstrated how he proceeded south, walking, holding his flashlight and looking at the windows. He had gone seventy-five feet or so when he stepped into the hole. He testified that while at the corner of the building he had directed his flashlight "about to that hole" and the area looked clear and normal. He saw no barricades, wires, lights or piles of dirt around the hole. He had received no information concerning the hole and did not anticipate it would be there.

The next day Nickell's foreman, at the suggestion of an inspector for the state architect, erected wire barricades with flags around the hole.

Nickell's principal contention upon appeal is the trial court erred in overruling his motions for directed verdict made at the close of plaintiff's evidence and at the close of all the evidence, for the reason the evidence established that plaintiff was guilty of contributory negligence as a matter of law. Generally, his argument is this: Plaintiff was aware construction was going on south of the library and that a tunnel was being dug north through the tennis

courts; notwithstanding, he started southward in the darkness along the west side of the library after using his flashlight only once to inspect the area he was traversing, continuing to look toward the building, and he fell in the hole because he failed to use his flashlight to inspect ahead.

The general rules concerning contributory negligence have been stated by this court many times and need not be repeated.

Nickell cites and relies on cases in which it was held that a person falling into a hole or stairway in the darkness was guilty of contributory negligence as a matter of law. None parallel the factual situation here, the important difference being that the injured person in those cases was in an area off the beaten path either where he had no right to be or where his presence was not expected and with whose surroundings he was unfamiliar. In *Fowler v. Mohl*, 172 Kan. 423, 241 P. 2d 517, this court stated that one who fails to look for danger where there is no reason to apprehend it is not guilty of contributory negligence as a matter of law.

In *Blankenship v. City of Caney*, 149 Kan. 320, 87 P. 2d 625, plaintiff sued for damages sustained in a fall on a crosswalk in the defendant city. A portion of the crosswalk over a ditch was composed of planks and was narrower than the abutting brick portions of the crosswalk. The plank portion was not guarded by rails or barriers. A light previously maintained at night had been discontinued. On a dark, rainy night plaintiff missed her footing and fell into the ditch. She was familiar with the physical situation as it existed in the daytime but was not aware the boarded portion over the ditch was more narrow than the brick part leading up to it. This court held the issue of her contributory negligence was a fair question for the jury.

*Gant v. Gas Service Co.*, 156 Kan. 685, 135 P. 2d 533, was an action for injuries sustained when plaintiff fell at night into an unlighted hole made by defendant. Plaintiff was walking home from church on her usual route when she walked by an alley and fell into the hole. She had seen men working in the street but not near the alley and she saw lanterns in the street that night. Defendant argued she had notice of a dangerous condition and was guilty of contributory negligence by not proceeding with proper caution. Again the question was held to be one for the jury.

Here plaintiff was making a routine tour in familiar ground where he had experienced no previous difficulty. He was aware

of construction further south and east where the barricades and lights were, but there was nothing to alert him to the existence of the isolated hole. In fact the presence of warning signals in the area where he knew excavation was occurring may well have allayed apprehension as to every step of the way elsewhere. He did use his flashlight and look before proceeding south. A hole in bare earth is not, at night, the most readily discernible object under any circumstances. Plaintiff demonstrated the precise manner in which he proceeded along the side of the library. We do not have the benefit of that enactment as did the jury. At the least we think the evidence did not convict plaintiff of contributory negligence as a matter of law and the issue was properly one for jury determination.

Nickell complains the trial court, over his objection, erroneously received evidence that he erected barricades around the hole the day after Huxol fell. Nickell argues reception of this evidence was in violation of K. S. A. .60-451, which provides:

"When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."

It should be noted the statute prohibits only evidence of subsequent remedial repair offered to prove negligence or culpable conduct.

The record reveals the challenged evidence was neither offered nor received for that purpose.

Further background facts should be stated. As indicated, Huxol sued both Nickell and Rome, charging each with negligence. In their separate answers, among other things, each defendant disclaimed responsibility for Huxol's injury, each charged the other defendant with negligence causing it and each filed a cross-claim against his co-defendant asking for judgment in the event plaintiff received judgment against the cross-claimant. Additionally, at pretrial conference all parties entered into a stipulation, which was received in evidence at trial, as follows:

"The power plant contract between defendant Nickell and the State of Kansas contained, in part, the following provisions:

"2-10 *Barricades:*

"(a) Furnish and maintain all necessary guard rails, barricades, canvasses, etc., as needed to protect the passers-by and buildings.

"3-6 *Guard Rails*, etc.:

"(a) Furnish and maintain necessary guard rails and barricades which shall be properly lighted at night.

"4-3 *Guard Rails:*

"(a) Furnish and maintain necessary guard rails and barricades which shall be properly lighted at night."

Evidence may be incompetent for one purpose but entirely proper for another (29 Am. Jur., 2d, Evidence, § 262, p. 310).

The trial court made the following statement concerning the evidence of subsequent remedial conduct:

"The evidence of the condition immediately after the accident and the erection of barricades on April 4, was admitted under the explanation shown in Kansas Code of Civil Procedures annotated by Spencer Gard in the annotation under K. S. A. 60-451, particularly the last paragraph on page 443, which is headed 'Explanation of Changes in Kansas Law.' And the evidence was admitted by the Court under all of the reasons set out in the paragraph beginning with the last paragraph on page 443 of Gard's commentary. And to summarize on the following pages, No. 1, to show the conditions and circumstances existing at the time of the accident by introducing the circumstances observed the morning following the accident. Number 2, to show the responsibility for the erection of barricades, markers and lights since we have two defendants in this case. Number 3, since this case is to some extent an action on a contractual obligation for the benefit of third parties, for the erection of barricades, markers and lights around excavations at the construction site, it is admitted in evidence for that reason also.

"Now, then, it is not admitted into evidence for the purpose of proving negligence at the time of the accident. And if any counsel desires an instruction to that effect, please prepare such a requested instruction and the Court will consider it."

Counsel for Nickell, when queried again about the matter, specifically stated he did not want an instruction given as to the limited scope of this evidence, as contemplated by K. S. A. 60-406.

The question is simply one of relevancy of the evidence as to other issues.

Evidence of subsequent remedial conduct is admissible to show the condition of the place or thing involved at the time of the accident (*City of Emporia v. Schmidling,* 33 Kan. 485, 6 Pac. 893), on the issue of whose responsibility it was to make repairs, and to show control of premises where control is a matter of dispute (Gard's Kansas Code of Civil Procedure, § 451; 2 Jones on Evidence, 5th ed., § 387; anno. 170 A. L. R. 7 and 64 A. L. R. 2d 1299). The latter aspect of the rule was stated in *Tipton v. Street Railway Co.,* 89 Kan. 451, 132 Pac. 189, thus:

"Evidence of subsequent repairs and alterations is competent for the purpose of showing defendant's control over the place where the injury was received." (Syl. ¶ 3.)

Here plaintiff was attempting not only to show the absence of a barricade on the premises at the time of his injury, he was seeking recovery from both Nickell and Rome, each of whom was disclaiming responsibility, and it was incumbent upon him to show such responsibility and control as he was able. Plaintiff was entitled to make this showing.

Nickell makes the further argument the evidence should not have been admitted because of a pretrial stipulation entered into by the parties. The stipulation relied upon was:

"Issue of liability between the defendants shall not be submitted to jury & shall be reserved for trial to the court with right of *D's* to enter additional evidence on such issue after termination of jury trial."

The narrow scope of the stipulation is apparent—it referred only to liability between the defendants upon their cross-claims and did not foreclose plaintiff from pursuing either or both defendants. The trial court did not err in admitting the evidence.

Nickell contends the trial court erred in permitting certain testimony to be elicited by Rome over Nickell's objection, relating to the terms of Nickell's contract with the state. A short answer to the complaint is that the testimony elicited did not go beyond the facts agreed to by the parties and offered in evidence pursuant to their pretrial stipulation. Also, Nickell as a witness in his own behalf testified on direct examination as to the same matters to which objection is now made. The trial court did refuse admission of the written contract itself into evidence when offered by Rome. It also specifically instructed the jury a subcontractor cannot by contract be relieved of his duty to exercise reasonable care. We should point out, however, we are not here concerned with any issue of contract relationship or of indemnity between Nickell and Rome.

Nickell complains an instruction to the jury respecting the duty of a pedestrian to exercise reasonable care failed to emphasize, as requested, that a higher degree of care was necessary in darkness or when light was dim. Jury instructions should be objective, impartial, and, as far as possible, general in nature so as to be adaptable to varying circumstances disclosed by the evidence. Instructions which are argumentative or slanted toward one side

should be avoided. The matter of partisan emphasis and argument is thus left to the advocates, where it properly belongs. The instruction given was general in terms, the standard stated being the exercise of reasonable care "under the facts, conditions and circumstances then and there existing." The complaint cannot be upheld.

Nickell also contends instruction No. 14 had the effect of exonerating plaintiff from any obligation to exercise reasonable care at the time of his injury. The record is far from clear that at trial level any such complaint was ever made. We have nonetheless examined the instruction but cannot ascribe to it the result stated. Instructions are to be construed together and are sufficient if, taken as a whole, they properly state the law. The jury was clearly and properly informed in the instructions of the defense of contributory negligence and of the law applicable thereto.

Nickell complains that plaintiff's counsel in his closing argument wrongfully used a mathematical formula in presenting the matter of damages. In his petition plaintiff asked for damages in the sum of $75,000. His counsel requested that amount in the final argument, using a chart to display the damages sought. The jury verdict was a general one for $50,000. The jury argument was recorded by the court reporter and the chart has been reproduced for us as an exhibit, so we can follow step by step all that transpired. First of all, counsel stated the amount of plaintiff's medical and hospital bills to date, $935.46, and he exhibited that figure on the chart. Counsel then referred to loss of wages as night watchman at the college during the time he was off work, which amounted to $648.00, and this figure was exhibited as the Fort Hays loss. Huxol also had had a part-time job at a motel, and counsel showed the loss of wages for this as $375.00. Next he listed the sum of $143.50 paid to a woman for cooking and housecleaning while he was totally disabled and also $29.50 paid to a boy for yard work. These out-of-pocket items were then shown to total $2,131.46.

Counsel next stated the evidence indicated the sum of $1,400.00 for future medical and hospital expense would be necessary. The basis in the evidence was that plaintiff had sustained a compressed lumbar vertebra as a result of his fall, had been hospitalized and put in a cast but had had a poor recovery with the vertebra slowly recompressing despite use of a back brace, had endured much pain, and further surgery to effect a spinal fusion was indicated. Counsel then stated that during the hospitalization period for this operation

and the recuperation period of total disability there would be a loss of wages of $3,200.00, and he listed that figure. Counsel used a median period of time shown by the evidence in making this computation. He then added the three figures ($2,131.46, $1,400.00 and $3,200.00) and charted the result, $6,731.46. At this point counsel for Mr. Nickell objected, stating: "We make an objection to the form of the argument that Mr. Dreiling is making. It is improper." The court overruled the objection. The foregoing was the only objection made and the summation continued.

Counsel referred to plaintiff's life expectancy of 22.2 years, his annual wages of $5,700, his permanent bodily disability rated by an orthopedic surgeon at 25% which he projected (mathematically correctly) to a figure of $31,635.00. Counsel did mention certain variables possible in this projection. He then added this figure to the $6,731.46 already referred to, making the sum of $38,366.46 shown on the chart. He then concluded his argument on the subject of damages, stating:

"Now, you say where do you feel he lost this $75,000.00. Well, we could have said his pain is worth millions, but we didn't. You think about 22 years with a broken back with all the discomfort and the pain, and it isn't going to get any better. You may have to fuse it, which means it is going to be solid, not like your normal back. We think the pain and suffering is the difference. It is surely worth thirty-six and a half thousand dollars over 22 years."

Counsel then placed the final figure on the chart for pain and suffering in the sum of $36,633.54. Recapitulating, the last figures on the chart were:

$6,731.46
31,635.00
———
$38,366.46
36,633.54

The sum of the last two figures is $75,000, the amount sought by plaintiff.

As we have already indicated the only objection made to the argument came at the point where counsel totaled out-of-pocket or special damages to date and damages attributable to future hospitalization and surgery. These items were solidly supported by evidence and it is not contended otherwise. Complaint now is that the argument made thereafter was in violation of the rule announced in *Caylor v. Atchison, T. & S. F. Rly. Co.*, 190 Kan. 261,

374 P. 2d 53. A complete answer to the objection now raised might well be it was not made when the argument was given, indicating satisfaction with the argument at that time. Many of our cases have held that alleged improper argument may be waived by failure to object. However, considered on its merits, the objection now made is not well taken.

Generally, speaking, the thrust of *Caylor* was toward a mathematical formula technique by counsel using a blackboard in closing argument to project damages for future pain and suffering and permanent disability. This formula argument was proscribed, primarily on the basis it amounted to the attorney giving testimony in his closing argument which was not wholly reliable and was not otherwise present as evidence in the case. Emphasis in *Caylor* was directed against arguing future pain and suffering on a per diem basis at a fixed unit value; however, the court stated:

"In this jurisdiction there is no valid objection to counsel, in argument, telling the jury what, under the evidence, counsel considers a fair compensation for the injuries received. It is customary for counsel in argument to suggest a total monetary award for pain and suffering." (pp. 263-264.)

This is exactly what plaintiff's counsel did in this case. The medical evidence revealed support for a substantial award for future pain and suffering. Likewise the evidence contained support for a substantial amount for permanent bodily disability, in line with the argument made, as already shown. Assuming timely objection, the argument simply did not fall within *Caylor's* proscription. There is no indication the amount was the result of passion and prejudice on the part of the jury and it must be approved.

Various other matters complained of, including denial of motion for new trial, have been examined but are without merit and require no discussion.

The judgment is affirmed.

APPROVED BY THE COURT.