No. 45,821

VIRGIL HUXOL, *Appellee,* v. E. L. NICKELL d/b/a NICKELL CONSTRUCTION COMPANY, *Appellant,* and AL M. ROME d/b/a AL M. ROME DITCHING SERVICE, *Appellee.*

(476 P. 2d 606)

Opinion filed November 7, 1970.

*Jerry M. Ward,* of Hampton and Ward, of Great Bend, argued the cause, and *Thomas C. Boone,* of Hays, was with him on the brief for the appellant.

*J. Eugene Balloun,* of Turner and Balloun, of Great Bend, argued the cause, and the firm of Driscoll and Driscoll, of Russell, was with him on the brief for the appellee Al M. Rome, d/b/a Al M. Rome Ditching Service.

The firm of Dreiling and Bieker, of Hays, was on the brief for the appellee Virgil Huxol.

The opinion of the court was delivered by

KAUL, J.: The appellant, E. L. Nickell, d/b/a Nickell Construction Company, appeals from a judgment of the trial court denying indemnification against appellee, Al M. Rome, d/b/a Rome Ditching Service, for a judgment recovered by appellee Huxol against appellant Nickell which was affirmed by this court in *Huxol v. Nickell,* 205 Kan. 718, 473 P. 2d 90.

Huxol sustained personal injuries as a result of falling into a hole on the Fort Hays Kansas State College campus, during a construction project on the campus. Nickell was the general contractor and Rome a subcontractor on the project, both were sued by Huxol.

In *Huxol v. Nickell,* supra, a jury trial resulted in a verdict for Huxol against Nickell and, by an answer to a special question, the jury absolved Rome of any negligence causing Huxol's fall. In the principal action Nickell and Rome filed cross claims against each other. The issue of indemnification, framed by the cross claims, was reserved by stipulation and tried to the court after the judgment in the principal case was affirmed by this court on appeal.

The facts concerning Huxol's fall, his injuries and the relationship of the parties are fully set out in *Huxol v. Nickell,* supra, and need not be repeated. Insofar as pertinent the opinion is incorporated herein by reference.

In the action before us now Nickell contends that he should be indemnified by Rome in the amount of the verdict rendered in favor of Huxol against Nickell. Nickell contends that indemnification is required of Rome because the damages were caused by the negligence of Rome or by the breach of his contract with Nickell.

In addition to evidence relative to the issue of indemnification submitted at the jury trial, the trial court heard and considered further evidence bearing on the issue in this subsequent proceeding. The trial court made the following findings:

"No. 1

"The applicable implied covenant of Al M. Rome to E. L. Nickell was to indemnify E. L. Nickell for any loss to Nickell for defective workmanship and for negligent acts of Al M. Rome resulting in injuries to third parties such as the plaintiff in this case.

"No. 2

"In the case before us the jury has already decided the factual issue of negligence and found that the defendant Al M. Rome, through himself or his employees, was not negligent, and that E. L. Nickell and his employees were negligent; and that the negligence of E. L. Nickell and his employees was the proximate cause of the injuries to the plaintiff. The claim of plaintiff for damages was tried on allegations of negligence only, there being no allegations of defective workmanship, and there is no evidence of defective workmanship in the case.

"No. 3

"Thus, the jury by specific finding (see the special questions and answers) exonerated the defendant Al M. Rome of any fault as a proximate cause of the accident and injuries to the plaintiff. The jury apparently found that Al M. Rome had no legal duty to erect barricades and provide lights in view of the contract, which is defendant's exhibit 3, and the conditions of supervision by Nickell's superintendent as shown by the evidence. The jury apparently found only the defendant Nickell had that duty by contract.

"No. 4

"The general contract, defendant's exhibits 3 and 4, provides specifically for E. L. Nickell to provide such safeguards and there is no evidence that he subcontracted that contractual obligation to Al M. Rome. (See defendant's exhibits 7 and 8 and defendant Nickell's testimony in his deposition taken October 30, 1967, at pages 7 and 8.)

"No. 5

"The Court finds that the policy of liability insurance held by the defendant Al M. Rome at the time of the accident could not change the above findings because the jury has already found that the defendant Rome was not guilty of any negligence, and therefore not liable for the injuries to the plaintiff. A continuance to obtain such policy should be and is denied.

"No. 6

"As between the defendants the court finds generally for the defendant Rome and against the defendant Nickell; and that the defendant Nickell is not entitled to any recovery from the defendant Rome.

"No. 7

"The court finds that judgment should be entered on all of the foregoing findings; and that all of them should be made a part of the judgment of the court in this instance, pointing out that the trial here today to the court is only on the issue which was reserved earlier by stipulation of the parties, being the issue of liability as between the defendants themselves."

On appeal, Nickell specifies four points of error all of which go to the central issue stated by him to be:

"Whether or not a general contractor is entitled to indemnification from a subcontractor for damages caused by the breach of a contract or negligence of such subcontractor."

Generally, Nickell argues the evidence established that Rome contracted, expressly or impliedly, to provide the necessary safeguards for the excavation work he was performing and that his failure to do so resulted in the jury returning a verdict against Nickell as general contractor. Nickell says that under such circumstances Rome should be required to indemnify him for the damages sustained by Huxol.

The trial court found to the contrary. Thus, the controlling issue on appeal is primarily the familiar question whether there is substantial competent evidence to support the findings of the trial court.

Under a state contract, Nickell commenced construction of a power plant on the campus of the Fort Hays State College. The conditions existing and the nature of the work being done on the

construction project on the date of the accident are fully set out in our former opinion. (205 Kan. 718). For our purposes here we need reiterate only the evidence bearing on the issue of indemnification.

On April 3, 1967, Rome's employees were excavating, what was described as the main heat tunnel, at a location between 100 and 200 feet south of the library. A large tunnel had previously been dug eastward from the power plant site. Wire barricades and warning lights had been placed at night on these excavations.

On the afternoon of April 3, 1967, Shukman, a Rome employee, was instructed by Willis Nelson, superintendent for Nickell, to jump ahead approximately 200 feet from the main excavation, where he had been working, and dig an isolated hole. Shukman commenced digging the hole as directed. Shukman left the area about 5 p. m. Huxol, while making his watchman's rounds that night, fell into the hole and was injured. The next day Nickell's employees erected barricades around the hole. Evidence of this remedial conduct by Nickell was admitted in the principal trial for the purpose of showing whose responsibility it was to make repairs and to show control of the premises where control is in issue. The action of the trial court in this regard was approved on appeal. A discussion of the matter may be found at page 723 of our former opinion. Relative to the instant issue, the evidence of remedial conduct tends to establish responsibility and control between Nickell and Rome.

In addition to the relative evidence received at the principal trial, the trial court heard and considered further evidence submitted in this subsequent proceeding. The latter evidence consisted of the testimony of Rome, his employee Shukman, and of Willis Nelson, superintendent for Nickell.

Rome testified that "I bid to perform all of the excavation and back filling." He said he did not bid to provide barricades and general protection to the site. He further testified that Nickell's superintendent was supposed to line up the work for Rome's men and tell them where to go next when they were finished with one job. Rome further testified that he did not believe he was on the project on April 3, 1967.

Shukman testified that he was operating a "dozer and backhoe" on April 3, 1967, and was digging the hole in question; that he had

been told by Nelson to start digging at a location designated by Nelson; that he was digging the hole exactly as Nelson had directed; and that Nelson checked on the work from time to time during the afternoon. Shunkman further testified that Nelson had never asked him, or to his knowledge Rome, to put up any barricades.

Nelson testified that he did not remember specifically anything that happened on April 3, 1967. He did not deny that he talked to Shukman on that day. He admitted that he had never asked Rome or any of Rome's employees to put up barricades. Nelson also testified that he had erected barricades around excavations on the job site and that after the accident he erected barricades around the area in question.

In addition to his testimony at the principal trial, a pretrial discovery deposition of Nickell was introduced. His testimony was that he had never discussed barricades or warning devices with Rome.

The specifications of the state contract expressly required Nickell to provide necessary barricades and devices needed to protect passers-by and buildings (see former opinion pages 722-723). Other documentary evidence consisted of Rome's cost statement submitted to Nickell. The pertinent part of the statement reads:

"Contract price for excavating—compaction backfilling—pulling trees etc. $3250.00"

In the light of the evidence recited we shall examine the findings of the trial court.

Neither party takes exception to the trial court's statement of the applicable implied covenant in finding No. 1. If there was a duty on Rome to erect protective devices it arose by implication since there was no express testimony whatsoever establishing any agreement on the part of Rome in this regard. Rome says he never agreed to erect barricades or figured it in his bid. Nickell admitted he had never discussed barricades with Rome. Erection of barricades was a part of Nickell's contract, there is no evidence that he subcontracted his obligation to Rome.

Whatever duty was incumbent on Rome then must stem from an implied covenent to indemnify Nickell for any loss by reason of defective workmanship or negligent acts.

Insofar as digging the hole in question is concerned, the evidence is that this job was performed exactly as directed by Nickell's super-

intendent. Shukman so testified and there is no evidence to the contrary. It cannot be said that defective workmanship by Shukman was the cause of Huxol's injuries.

Was Rome's employee, Shukman, negligent in leaving the job without erecting barricades? From the statements of the trial court in finding Nos. 2 and 3 it appears considerable weight was given to the jury's exoneration of negligence on the part of Rome. However, the jury's answer in this regard must not have been deemed a final determination of the issue since the trial court proceeded with this subsequent trial and heard further evidence. In finding No. 3 the trial court construed the jury's findings to be that Rome had no legal or contractual duty to erect barricades and further noted "the conditions of supervision by Nickell's superintendent as shown by the evidence."

According to Shukman's testimony he moved to the designated location and commenced digging, all as directed by superintendent Nelson; and that Nelson checked on the operation several times during the day. Rome testified that he was not on the job site on the day in question. Nelson did not remember the events of April 3, 1967, but he did not deny the facts as stated by Shukman. Even if Shukman could be said to be negligent, the evidence shows he was under Nelson's direction and control on the day in question.

Applying the familiar rule of this court pertaining to appellate review to what has been said, we cannot disturb the trial court's findings of fact. This court will not weigh evidence or pass upon the credibility of witnesses. When findings of fact are attacked for insufficiency of evidence, or as being contrary to the evidence, the power of this court begins and ends in determining whether there is any competent substantial evidence to support the findings. (*Schnug v. Schnug*, 203 Kan. 380, 454 P. 2d 474; *Atkinson v. Herington Cattle Co., Inc.*, 200 Kan. 298, 436 P. 2d 816, and cases cited therein.)

Counsel for Nickell seeks to apply a rule of law recognized by this court in a line of cases commencing with *Laffery v. Gypsum*, 83 Kan. 349, 111 Pac. 498. In *Laffery* the general rule was declared to be that when a person lets out work to another, the contractee reserving no control over the work or workmen, the contractee is not liable for the negligence or improper execution of the work by the contractor. The rule stated, though well-established in this

jurisdiction, is not applicable to the instant case where Nickell, through his superintendent, was exercising direction and control over Shukman the employee of Rome, the subcontractor.

Nickell also cites *Nelson v. Cement Co.*, 84 Kan. 797, 115 Pac. 578, and *Reilly v. Highman*, 185 Kan. 537, 345 P. 2d 652. Neither case is helpful here, they both deal primarily with the issue of what relationship existed between the parties involved and whether the inherently dangerous work exception to the nonliability rule applied. In both opinions the general rule stated in *Laffery* is recognized, but neither decision is helpful to Nickell for the same reason that *Laffery* lends no support to his position.

In *Phillips Pipe Line Co. v. Kansas Cold Storage, Inc.*, 192 Kan. 480, 389 P. 2d 766, cited by Nickell, it was held that a landowner contractee is not liable for the negligence of an independent contractor who damaged Phillips pipe line while cleaning out a ditch on the landowner's property. No negligence on the part of the landowner contractee was established and he reserved no right to direct or control the work being done. The case is obviously distinguishable from the factual situation established in the instant case.

Nickell also cites the case of *Fenly v. Revell*, 170 Kan. 705, 228 P. 2d 905, a master and servant case, wherein it was held a servant is liable to and may be sued by his master for damages which the latter, in the absence of fault on his part, has been compelled to pay third persons because of negligence of the servant. Principles enunciated in *Fenly* are not applicable here for the simple reason that under no theory could Nickell be said to be without fault.

No Kansas case is cited which deals directly with the application of principles of indemnity between a general contractor as contractee and a subcontractor as contractor. Although it dealt primarily with indemnity between joint tort-feasors and problems of third party practice, both parties cite the case of *Russell v. Community Hospital Association, Inc.*, 199 Kan. 251, 428 P. 2d 783. Nickell points out that in *Russell* this court recognized the rule of law which permits a party who has been held liable to look for indemnity from a third party who was the real wrongdoer and primarily liable for the injury. Rome, on the other hand, calls attention to the fact that throughout the opinion this court recognized the rule that there is no indemnity where the party seeking such has been actively negligent.

In the *Russell* case the question of primary liability between the alleged joint tort-feasors had not been determined when the case reached this court. The thrust of the decision was that where the requirements of third party practice had been complied with, a third party plaintiff was entitled to a trial on the issue of indemnity between joint tort-feasors where they are not *in pari delicto* and their negligence is substantially different, not merely in degree but in character.

The instant case comes here on appeal with the negligence of Nickell as the sole and proximate cause of the injury, established as a fact in the trial court. Even if Rome could be said to be guilty of negligence as a matter of law, Nickell's primary negligence must be absolved or reduced to passive or constructive negligence constituting only secondary liability, before he could become entitled to indemnification.

Nickell was expressly obligated under the terms of his contract. His superintendent was on the project and the specific job which brought about the injury was under the direct supervision and control of the superintendent. Thus, the negligence of Nickell, as found by the jury and trial court, cannot be said to be passive, implied or constructive as distinguished from direct, primary, or active negligence.

The rule is succinctly stated in 41 Am. Jur. 2d., Indemnity, § 21, p. 710:

". . . the rights of a party to indemnification will be denied where his own wrongful act or omission proximately contribute to the injury complained of." (p. 711.)

Application of the foregoing principles is demonstrated in the case of *Osgood v. D. W. Winkelman Co.*, 87 N. Y. S. 2d 110, wherein the factual background and the issue of indemnification of a general contractor, by a subcontractor, are closely akin to those present in the instant case. Under a general contract with the State of New York for reconstruction of a highway, Winkelman agreed to erect suitable barricades and lights whenever necessary to protect the traveling public. As in the instant case, Winkelman subcontracted a specific part of the work (laying the top course of the highway surface) to Eastern Rock Products, Inc. Eastern employees left a paving machine on the highway unlighted. The plaintiffs, who were highway users, suffered injuries as a consequence. A jury found both Winkelman and Eastern guilty of negligence. There-

after the trial court denied a cross claim of Winkelman against Eastern for indemnification. On appeal, in affirming the trial court's ruling on indemnification, the appellate court said:

". . . Under general principles of law and also under its contract with the State Winkelman had a duty to guard against any dangerous conditions in the highway. That duty was separate and distinct from any duty that rested on Eastern. In so far as the duty was created by general principles of law, it could not be delegated by Winkelman. In so far as it was created by the State contract it was not transferred to or assumed by Eastern; nor did Eastern by its arrangement agree to indemnify Winkelman for the breach of that agreement." (p. 116.)

Further in the opinion, the court noted that the rule proposed by Eastern, to the effect that a contractee who is merely passively negligent is entitled to be indemnified against an actively negligent contractor, is not applicable since both defendants were guilty of active negligence.

The principles enunciated in *Winkelman* appear to be in line with a substantial majority of the decisions on the subject according to the author's comments and a comprehensive collection of cases in an excellent annotation dealing with the specific subject in 97 A. L. R. 2d, Anno., p. 616.

Even though we were to declare Rome guilty of negligence as a matter of law in spite of the jury's and trial court's findings, as urged by Nickell, the trial court's judgment could not be reversed.

The judgment is affirmed.