No. 43,016

HOMER HOFFINE, *Appellant,* v. STANDARD ACCIDENT INSURANCE COMPANY, *Appellee.*

(379 P. 2d 246)

64

Opinion filed March 2, 1963.

*Robert L. Howard* and *A. Price Woodard, Jr.*, both of Wichita, argued the cause, and *Robert D. Watson, Roscoe D. Austin, George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard,* and *Charles J. Woodin,* all of Wichita, were with them on the briefs for the appellant.

*Donald A. Bell,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman, J. Ruse McCarthy, J. L. Weigand* and *Spencer L. Depew,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by an insured, plaintiff, against his insurance carrier, defendant, to establish liability upon the carrier for failure to defend under a family combination automobile policy, from the order of the trial court sustaining defendant's demurrer to plaintiff's evidence, from a further order overruling plaintiff's motion for new trial, and finally, from the judgment for defendant for costs.

The two errors complained of are that the trial court erred in sustaining the defendant's demurrer and in its order overruling plaintiff's motion for new trial.

Plaintiff was insured by defendant under a family combination automobile policy which contained the following provisions pertinent to the questions here involved:

"PART I—LIABILITY

.    .    .    .    .    .    .    .    .    .    .    .    .

"Coverage B—Property Damage Liability

.    .    .    .    .    .    .    .    .    .    .    .    .

"B. Injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; arising out of the ownership, maintenance or use of the owned automobile *or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent;* but the company may make such investigation and settlement of any claim or suit as it deems expedient. [Our emphasis]

.    .    .    .    .    .    .    .    .    .    .    .    .

"Persons Insured

"(*a*) With respect to the owned automobile . . . (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured.

"(*b*) With respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile . . . not regularly furnished for the use of such relative;

"Definitions

. . . 'non-owned automobile' means an automobile . . . not owned by the named insured or any relative. . . .

"PART III—PHYSICAL DAMAGE

. . . . . . . . . . . . .

"Other Insurance . . . If the insured has other insurance against a loss covered by Part III of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

This contract of insurance was entered into in February, 1958. On March 1, 1958, while plaintiff, at the request of Evan Schuessler, was driving a 1954 Cadillac owned by and registered in the name of Evan's father, Allen M. Schuessler, a rear-end collision occurred between the Cadillac and an automobile driven by Albert C. Carr. The following morning plaintiff reported the accident to the defendant insurance carrier and a representative from the Kansas Claims Service took a statement from him at that time. In December, 1958, Carr sued plaintiff and Evan Schuessler seeking damages in the amount of $25,550. Plaintiff counseled with A. Price Woodard, Jr., an attorney of his own choice, who in turn notified defendant that plaintiff had been sued by Carr.

Evan Schuessler, who was insured under a contract of insurance with the Employers Mutual Casualty Company, was represented by that company's firm of attorneys, and particularly by Mr. Robert C. Foulston. Since nothing had been heard from or done by defendant in regard to assisting its insured with a defense or defense counsel, Mr. Woodard requested permission from plaintiff to have Mr. Foulston assist him in defending the plaintiff.

Mr. Foulston, prior to this arrangement and on February 13, 1959, had written plaintiff explaining his representation of Employers Mutual, that suit had been filed against plaintiff, and that defendant had taken the position it was not obligated to defend plain-

tiff under plaintiff's policy with defendant. Mr. Foulston did not agree with defendant's contention and he did not wish to have plaintiff placed in jeopardy if some arrangement could be made to avoid it. He further suggested and requested discussion with plaintiff or his attorney, or even with plaintiff's parents, to try to work out a solution. There had apparently been subsequent correspondence between defendant's claim manager and Mr. Foulston for the reason that on April 14, 1959, in supplementing his letter of March 23, 1959, to Mr. Foulston, the claim manager stated that defendant has declined to contribute fifty percent in settlement. The claim manager then undertook to set out defendant's reasons for not participating in the settlement or in defending plaintiff, its insured, but in doing so he confused the policy provisions of section (a) and (b) under "Persons Insured" to the extent that we cannot construe his letter to constitute any reason for defendant's refusal to represent plaintiff. We also pause to say that during Mr. Foulston's testimony he stated he had personally examined a similar policy on file in the office of the state insurance commissioner and that the pertinent provisions of the policy issued plaintiff by defendant (hereinbefore set out) were different from the provisions set out in the claim manager's letter to him of April 14, 1959.

In a letter dated April 30, 1959, from the law firms of both Mr. Woodard and Mr. Foulston, defendant was reminded of plaintiff's demands for defense and protection, which had repeatedly been refused by defendant. The settlement of $2,000 with Mr. Carr was fully disclosed and defendant was informed that plaintiff would look to defendant for recovery of the amount paid plus attorney fees, interest and costs. Defendant failed and refused to furnish any defense, or defense counsel, to its insured under its contract.

Other exhibits, as well as other facts and circumstances with which we are not presently concerned, are set out in the record but they need not be discussed herein.

Plaintiff subsequently commenced the action out of which this appeal arises wherein the trial court, after introduction of plaintiff's evidence, sustained defendant's demurrer thereto and dismissed the jury.

Plaintiff thereafter filed a motion for new trial, which was overruled by the trial court on November 27, 1961, and judgment was entered in favor of the defendant and against the plaintiff for costs. Hence this appeal.

In considering the correctness of the trial court's order sustaining defendant's demurrer to plaintiff's evidence, we turn first to the general rule, as set out in 7A Appleman's Insurance Law and Practice, § 4683, p. 436:

"An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff."

The above is also the rule in Kansas under *Leonard v. Maryland Casualty Co.*, 158 Kan. 263, 146 P. 2d 378, where it was held:

"The obligation of an insurer, under an automobile liability policy, to defend an action for damages against the insured, is to be determined when action is brought, and not by its outcome.

"The duty of an insurer under an automobile liability policy to defend an action for damages against its insured is not measured by proof which may be adduced at the trial or by outcome of the litigation, but by the allegations of the petition in the action and by the terms and provisions of the insurance contract." (Syl. ¶¶ 1, 2.)

Defendant's duty to defend in our present case was clearly determined when it was notified Carr had sued its insured for $25,550. Defendant's contention that its policy was only an excess policy needs no discussion because the petition seeking $25,550 was obviously at least $550 more than the limits of Schuessler's policy claimed by defendant to be the primary policy. We merely call attention to defendant's claim its policy was excess and are not determining in this appeal which is the primary and which the excess policy.

The answer to a further contention by defendant that Employers Mutual furnished the money plaintiff used in paying the judgment rendered Carr in the tort action is to be found in *Gibbs v. Central Surety & Ins. Corp.*, 163 Kan. 252, 181 P. 2d 498, where it was said:

". . . the source of payment, if made in good faith, is immaterial to the insurer and cannot be inquired into, and that the payment may be made with borrowed money is no defense." (p. 259.)

Later cases discussing the duty of an insurer to defend actions against its insured are *Bennett v. Conrady*, 180 Kan. 485, 489, 305 P. 2d 823; and *Jameson v. Farmers Mutual Automobile Ins. Co.*, 181 Kan. 120, 127, 309 P. 2d 394, and cases therein cited. In the Bennett case we pointed out that the insurer was very meticulous in the defense of and in furnishing legal counsel to its insured but in the Jameson case, as here, the insurer made no effort to defend

its insured. (p. 127.) The Jameson case sets out and discusses many basic rules as to the duty and liability of an insurer which we do not deem necessary to repeat here.

Defendant lastly contends that proper service was not obtained upon plaintiff, then a minor, in the tort action and attempts to relieve itself of any obligation to pay the judgment rendered on the ground it was a nullity. Defendant owed a duty to present the question of lack of service in defense of its insured in the original tort action but having failed so to do, it certainly cannot now raise the question as a defense in this action. See *Anderson v. Surety Co.*, 107 Kan. 375, 191 Pac. 583, wherein an action was brought by two insureds (employers) to recover from their insurer damages they had sustained in a tort action brought by an employee, where the insurer could have set up as a defense in the tort action the fact that the employee and the two insureds were engaged in using dynamite in a coal mine in violation of law, and that the injury to the employee was thereby occasioned, it was held that the fact could not be set up by the insurer as a defense in the subsequent action by the insureds to recover against their insurer.

In view of the foregoing authorities we conclude the trial court erred in sustaining defendant's demurrer to plaintiff's evidence. Other questions raised need not be determined.

The judgment is reversed with directions to overrule the demurrer and try the cause.