No. 46,568

Tamila Jo Cullen, Anthony Joseph Cullen and Terri Lynn Cullen, minors, by David Cullen, Guardian of the person of said minors, and State Farm Mutual Automobile Insurance Company, *Appellees,* v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant.*

(507 P. 2d 353)

Opinion filed March 3, 1973.

*J. L. Weigand, Jr.,* of Weigand, Curfman, Brainerd, Harris and Kaufman, of Wichita, argued the cause, and *J. B. Reeves,* of Topeka, was with him on the brief for the appellant.

*Jerry G. Elliot,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Robert L. Howard,* of the same firm, was with him on the brief for appellee State Farm Mutual Automobile Insurance Company.

*James F. Foster,* of Foster and Foster, of Wichita, argued the cause and was on the brief for appellee David Cullen, *et al.*

The opinion of the court was delivered by

HARMAN, C.: This is an interlocutory appeal in a wrongful death action. Issues presented involve validity and construction of a loan

receipt agreement entered into by the guardian of the minor heirs of a passenger killed in an automobile-railway train collision and the liability insurance carrier of the driver of the automobile occupied by the decedent at the time of the collision.

The collision occurred February 6, 1970, at about 9:00 a. m. at a county road crossing the mainline track of appellant Santa Fe Railway Company, four miles east of Harper, Kansas. A 1959 Volkswagen driven by Neal LaFrance struck the side of the lead engine of an eastbound train, resulting in minor injuries to the driver and the instant death of his passenger, Richard W. Cullen. There was fog in the general area where the collision occurred. The crossing was an unobstructed rural road type grade crossing, protected by standard reflectorized crossbuck signs and by state highway advance railroad crossing warning signs. LaFrance and Cullen were on their way to work at the time. Each had been taking turns driving his own car in a car pool arrangment. Appellee State Farm Mutual Automobile Insurance Compaany had an automobile liability policy covering LaFrance.

Shortly after the collision David Cullen was appointed guardian of the persons and conservator of the estates of Richard W. Cullen's surviving minor children, who are appellees herein, and he employed James Foster as attorney to prosecute any claims he might have as a result of the collision. Mr. Foster made demand upon State Farm in the amount of eighty per cent of its maximum potential exposure, or $29,600. State Farm advised Santa Fe of this offer of settlement by a letter containing its then assessment of the liability situation and it demanded that Santa Fe contribute an equal amount toward making the proffered settlement. Santa Fe responded to State Farm that it did not consider itself liable for the Cullen death and it declined to contribute to any settlement.

On July 15, 1970, State Farm paid $29,600 to the guardian for the Cullen children pursuant to a written instrument, which states:

### "LOAN RECEIPT

"RECEIVED from State Farm Mutual Automobile Insurance Company, the sum of Twenty-nine Thousand Six Hundred and no/100 ($29,600.00) Dollars, and for value received, the undersigned David Cullen, Guardian of the Persons and Conservator of the Estates of Tamila Jo Cullen, Anthony Joseph Cullen, and Terri Lynn Cullen, minors, and James F. Foster, attorney for David Cullen and said minors, promise to pay to State Farm Mutual Automobile Insurance Company said sum of Twenty-nine Thousand Six Hundred and no/100 ($29,600.00) Dollars, together with interest at five percent (5%) per annum from July 1, 1970.

"Said sum shall be repayable by the undersigned only out of any recovery obtained by the undersigned for and on behalf of said minors against the Atchison, Topeka & Santa Fe Railway Company, which Company is deemed by the undersigned to be legally liable for an accident which occurred on or about February 6, 1970, approximately one-fourth (¼) mile north and four (4) miles east of Harper, Kansas, and in which accident Richard W. Cullen, father and natural guardian of said minors, was killed resulting in substantial damages to said minors as the heirs of said Richard W. Cullen, deceased. The undersigned agree to prosecute said claim and/or suit on behalf of said minors against said Railway Company with due diligence, and agree to appear at all necessary hearings and trials and to cooperate with counsel for State Farm Mutual Automobile Insurance Company in the handling of any such claim or litigation.

"In further consideration of said loan, the undersigned, individually, and for and on behalf of said minors, hereby agree not to bring or prosecute or allow to be brought or prosecuted in our names, nor for or on behalf of said minors, any claims or suits against Neal LaFrance or State Farm Mutual Automobile Insurance Company, for any damages sustained or claimed as a result of said accident and the death of said Richard W. Cullen, but it is expressly agreed and understood that the undersigned reserve the right to bring suit or claims against the Atchison, Topeka & Santa Fe Railway Company for such damages as aforesaid.

"In further consideration of said loan, the undersigned do hereby agree to indemnify and hold harmless the said Neal LaFrance and State Farm Mutual Automobile Insurance Company, against and from all further loss, expense, liability, claims or damage, of whatsoever kind or character, including any and all costs, expenses and reasonable attorney fees, which may be incurred or suffered by reason of any claims, demands, actions or lawsuits which may be filed or claimed to exist by the undersigned, or which may arise out of or result of any claim for damages for the death of said Richard W. Cullen filed against said Railway Company by the undersigned.

"As security for repayment of said loan, the undersigned hereby agrees to hold said loan proceeds in trust and upon trust, as co-trustees, by deposit or investment in accounts or securities approved by the Probate Court of Sedgwick County, Kansas, and to use said loan proceeds only as necessary for the actual support and maintenance of said minors pursuant to direction and order of the Probate Court of Sedgwick County, Kansas; and such trust shall terminate upon the conclusion of the claim or suit to be prosecuted against said Railway Company by final judgment, or by settlement, subject to approval of the attorney for the State Farm Mutual Automobile Insurance Company, or as may otherwise be agreed upon by the undersigned and said attorneys.

"Dated this 11th day of July, 1970.

"/s/ David L. Cullen
" (David Cullen)
"/s/ James F. Foster
" (James F. Foster)"

This document was prepared by counsel for State Farm and for the guardian and prior to acceptance thereof was approved by the

probate court of Sedgwick county, Kansas, without notice to Santa Fe and without evidence other than the verified application for approval.

August 7, 1970, the guardian commenced this action against Santa Fe for the wrongful death of Richard W. Cullen. In his petition the guardian alleged the day was an exceptionally foggy one; that the train was speeding at the time of the collision and its whistle was not sounded prior to reaching the crossing as required by law; that expenses for Cullen's funeral amounted to $1,926.61, and he asked for judgment against Santa Fe for $36,926.61.

Santa Fe filed its motion to dismiss on the grounds, among others, that the action had not been brought by the real party in interest; the plaintiff lacked capacity to sue; the suit was filed by the guardian solely in compliance with a contractual obligation incurred as a result of the loan receipt agreement and said suit therefore violated public policy; and the guardian had been fully compensated for the damages resulting from the collision and had released any claim against Santa Fe by entering into the loan receipt agreement.

In the alternative Santa Fe moved for an order reducing the amount of any judgment obtained against it by $29,600, the sum received by the guardian in his settlement with State Farm.

The trial court denied Santa Fe's motion. Thereafter upon Santa Fe's application State Farm was made an involuntary plaintiff in the action upon the ground it was a contingently necessary party under K. S. A. 1972 Supp. 60-219 (a), and at the same time the trial court entertained a motion for rehearing by Santa Fe of its motion to dismiss. State Farm then filed its entry of appearance in the action and moved for summary judgment. Thereafter the parties entered into a stipulation of facts for the purpose of hearing and determining all motions, which facts are in accord with those herein recited. It was stipulated the guardian contends Santa Fe did not blow its whistle at least eighty rods from the intersection as provided by K. S. A. 66-2,120 and that his evidence on this consists of the statement of Neal LaFrance to the effect LaFrance did not hear the whistle until just before impact. Santa Fe's evidence that its whistle was blown pursuant to statute consists of the statements of the locomotive engineer, head brakeman and signal maintainer. Also, it appears that at the time of the collision the decedent was thirty-four years of age, during the preceding

year he had earned nearly $13,000 and he had custody of his three children, who ranged in age from six to ten years, and from whose mother he was divorced.

The trial court adhered to its previous order denying Santa Fe's motion to dismiss and its motion for *pro tanto* credit and the court sustained State Farm's motion for summary dismissal from the action. In making its rulings the trial court entered the following findings and conclusions:

"1. That there was no concert of action, common design, joint enterprise or other relationship which could make the defendant and Neal LaFrance joint tort-feasors, and that the allegations against defendant charge it with being an independent concurring or successive tort-feasor.

"2. That the instrument executed by and between plaintiffs and involuntary party plaintiff, marked Exhibit 'A', is a loan receipt and does not constitute a release, that it does not allow the plaintiffs to recover twice for the same wrong or injury, but rather allows them to proceed against defendant herein and that defendant is therefore not entitled to a pro tanto reduction herein.

"3. That the plaintiffs are the real party in interest and they have not assigned their cause of action to State Farm Mutual Automobile Insurance Company.

"4. That the loan receipt, Exhibit 'A', after approval by the Probate Court of Sedgwick County, Kansas, was properly executed by David Cullen, the guardian conservator of the minors in the best interests of their estate and that the terms thereof provide a just, fair and equitable method permitting plaintiffs to resolve their dispute with State Farm Mutual Automobile Insurance Company and preserve their rights to proceed against defendant herein, and said instrument is not against public policy.

"5. That the defendant, The Atchison, Topeka & Santa Fe Railway Company, had an opportunity to contribute to a full and complete settlement by and between all parties, but refused to do so and by refusing to contribute or participate, it cannot now claim credit for the sum paid by State Farm Mutual Automobile Insurance Company to the Cullen children under the terms of the loan receipt, and it is now estopped to attack or claim the benefit of the terms thereof."

The trial court further made the requisite order preliminary to interlocutory appeal by Santa Fe under K. S. A. 60-2102(*b*), which appeal this court later authorized pursuant to Rule No. 5.

Santa Fe asserts error in the denial of its motion to dismiss or in the alternative its request for *pro tanto* credit upon any judgment obtained against it for the amount of the settlement paid the guardian by State Farm. It also urges State Farm is a contingently necessary party to the action.

Appellant Santa Fe directs many thrusts against the loan receipt, although of varying force, and we will consider that instrument in the light of those attacks along with appellees' parries.

Appellant argues that the children through their guardian have assigned their cause of action to State Farm and they are therefore not the real parties in interest under K. S. A. 1972 Supp. 60-217 (a) which provides that every action shall be prosecuted in the name of the real party in interest. The argument lacks merit. The guardian's suit was for the sum of $36,926.61—the loan receipt evidenced payment of only $29,600. In *Ellsaesser v. Mid-Continent Casualty Co.*, 195 Kan. 117, 403 P. 2d 185, 13 A L R 3d 133, we dealth with a somewhat analogous situation in determining who was the proper party plaintiff to bring an action against an alleged tortfeasor for damage to insured property where the insurer had paid part of the loss. *Ellsaesser* differs in its factual setting from that at bar in that there the insurer had subrogation rights by reason of its payment to its insured which would not be the case as to a payment made to a stranger by reason of liability coverage. Nonetheless, we think the difference is not significant. The deciding factor is whether the amount received, whether denominated loan or payment, is full satisfaction or only partial satisfaction of the loss. The amount received by the guardian was less than the maximum obtainable in a wrongful death action (K. S. A. 60-1901, *et seq.*, as amended) and must be considered as partial satisfaction only, thus permitting him to bring this suit.

Allied with the foregoing is appellant's assertion the loan receipt agreement violated public policy in that it smacks of champerty and maintenance and constitutes an assignment of a tort claim which is prohibited. We might well decline to consider the champerty and maintenance issue because it was not raised nor presented to the trial court; however, we see nothing in the agreement complained of rendering it subject to that doctrine nor did it constitute an illegal assignment of a tort claim inasmuch as State Farm did have at least a possible interest in any wrongful death action brought by the guardian (see 14 Am. Jur. 2d, Champerty and Maintenance, §§ 2, 3, 9; 14 C. J. S., Champerty and Maintenance, §§ 1-3).

Appellant further contends the loan agreement cannot be given its full effect in that appellant and LaFrance were active joint tortfeasors and to enforce the agreement according to its terms would thwart the law in this state against contribution between joint tortfeasors and the law prohibiting indemnity between active tortfeasors whose wrongs were of the same quality or character.

The trial court in paragraph 1 of its memorandum opinion stated there was no concert of action, common design or other relationship

which could make appellant and LaFrance joint tortfeasors and that the allegations in the guardian's petition against appellant charge it with being an independent concurring or successive tortfeasor. Under our decisions the trial court erred in its conclusion. Neither concerted action nor common design is essential to a determination that two or more wrongdoers are joint tortfeasors. In *Tilden v. Ash,* 145 Kan. 909, 67 P. 2d 614, this court held:

"Substantially concurrent negligent acts of two or more persons render all liable as joint tortfeasors where the act or acts of each contribute to the injury. In such circumstances the degree of culpability of each is immaterial and each is liable for the entire damage." (Syl. ¶ 2.)

(To the same effect see also *Rork v. Beatty,* 169 Kan. 320, 219 P. 2d 355; *Gardner v. Pereboom,* 197 Kan. 188, 416 P. 2d 67; *Avey v. St. Francis Hospital & School of Nursing,* 201 Kan. 687, 442 P. 2d 1013.)

In the case at bar both appellant and LaFrance are alleged to have been negligent in causing the Cullen death, LaFrance with respect to the handling of his vehicle and appellant in the operation of its train, which acts occurred substantially concurrently. Hence, at this stage of the lawsuit, they must be regarded as joint tortfeasors and the trial court erred in ruling otherwise. Kansas has always adhered to the rule that there is no contribution between joint tortfeasors (*Alseike v. Miller,* 196 Kan. 547, 412 P. 2d 1007). Where the question of contribution between tortfeasors is involved courts will look to the substance of the transaction, not its form (18 Am. Jur. 2d, Contribution, § 33). Contribution may be said to be involved here by reason of the loan receipt and to that extent the rule prohibiting it would be frustrated and, accordingly, the agreement must be held ineffective to confer upon appellee State Farm a right to contribution from appellant.

In considering the issue of indemnity the difference between that term and contribution must be kept in mind. Although the two terms have on occasion been used interchangeably, contribution means a sharing of the loss, while the term indemnity as used in connection with the law relating to tortfeasors means a shifting of the entire loss (see *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P. 2d 783). As a practical matter that which is sought to be accomplished by appellee State Farm may more appropriately be said to be indemnity in that it seeks to recover from appellant by means of the loan receipt the full amount paid by it to the guardian. Indemnity is allowable in those situations

where the party seeking it is liable for another's injuries and damages by virtue of passive, implied or constructive negligence as distinguished from active, primary or direct negligence. Indemnity is not allowed between tortfeasors when they are *in pari delicto* (*Huxol v. Nickell,* 206 Kan. 102, 476 P. 2d 606; *Russell v. Community Hospital Association, Inc.,* supra). Both appellant and LaFrance stand charged with active negligence of the same character directly causing the death in question, in which instance State Farm, standing in LaFrance's shoes, is not entitled to indemnity against appellant and the loan receipt is likewise ineffective to confer any such right upon it.

The foregoing conclusions do not wholly dispose of the issues raised upon this appeal and the further contentions of the parties must be considered.

Appellant asserts the loan receipt actually constituted satisfaction in full of the guardian's claim arising out of the death and hence released appellant from liability, citing familiar law that an injured person can have but one satisfaction for the same wrong and the release of one joint tortfeasor releases all joint tortfeasors (see *Jacobsen v. Woerner,* 149 Kan. 598, 89 P. 2d 24). Appellant concedes the agreement between State Farm and the guardian reveals an intent to sue it but it emphasizes the fact that the agreement vests in State Farm a large measure of control over that suit. Appellant's argument largely rehashes those contentions respecting real party in interest, assignment of tort claim, violation of public policy, etc., which have already been disposed of. The issue further raised boils down to whether the loan receipt amounts to a release or to a covenant not to sue.

We briefly summarize the contents of that document. The first paragraph acknowledges receipt by the guardian of $29,600 from State Farm and promises to repay it at a specified rate of interest. The second paragraph specifies the method of repayment—only from recovery from Santa Fe because of its part in the death in question —and it contains the guardian's promise to prosecute that claim. The third paragraph contains the guardian's promise not to sue LeFrance or State Farm because of the Cullen death but it expressly reserves that right as against Santa Fe. The next paragraph apparently is meant to exonerate LaFrance and State Farm from payment of any costs or expenses incurred by the guardian as a result of pursuing Santa Fe. The last paragraph simply provides that as

security for repayment to State Farm of the loan, the loan proceeds will be held in trust, subject to certain conditions, until termination of prosecution of the claim against Santa Fe.

In *Sade v. Hemstrom*, 205 Kan. 514, 471 P. 2d 340, we stated the applicable rule of construction:

"Whether an instrument entitled 'Compromise and Settlement Agreement' is to be construed as a release or a covenant not to sue is determined by the terms of the instrument, the words used, the amount shown as paid and accepted, the substance of the agreement and the intention of the parties as manifested by the instrument." (Syl. ¶ 5.)

Here the loan receipt plainly reveals the amount received was not intended by either party to be full satisfaction of the loss sustained. It does contain a promise not to sue LaFrance or his carrier but it specifically reserves, indeed it mandates, prosecution of a wrongful death claim against Santa Fe. We have no hesitation in concluding that the loan receipt does not constitute a release so as to absolve appellant and the trial court properly denied its motion for dismissal upon that ground.

The instrument does contain a definite covenant not to sue. That much of it is proper and lawful in this jurisdiction. The policy of our law where efforts have been made to thwart the rules respecting either contribution or indemnity has been to leave the parties where it finds them. Here the guardian is holding the $29,600 by reason of a valid covenant not to sue. We know of no reason why the loan receipt is not sustainable and enforceable as such as to all the parties to this action, including both appellees. A covenant not to sue one joint tortfeasor does not release other joint tortfeasors; however, anything received by way of a covenant not to sue operates as a payment *pro tanto* upon any judgment obtained against the others (*Jacobsen v. Woerner,* supra). Accordingly, the trial court erred in denying appellant's alternative motion for *pro tanto* credit.

Appellee State Farm cites many cases from other jurisdictions in which the use of loan receipts has been fully upheld but for a number of reasons they supply no precedent here. We will attempt no case by case analysis but generally they present different factual postures from that at bar or turn on rules respecting contribution and indemnity different from our own. Most often they involve situations where an insurance carrier having subrogation rights is seeking complete recoupment of a loss paid by it and the loan receipt permits such recovery without the necessity of suit by the carrier in its own name and at the same time the injured person is,

without undue delay, put in funds satisfying his loss. The issue most often raised is whether the loan receipt evidences a true loan or payment. A case which at the time of its decision was a veritable law review treatise on principles governing loan receipts is *Bolton v. Ziegler*, 111 F. Supp. 516 (N.D. Ia., 1953). (For discussion of later cases, see anno. 13 ALR 3d 42). We have no quarrel with the decisions cited by appellees nor with the efficacy of a loan receipt in an appropriate case but as has been stated in discussing the device of a loan receipt used in an attempt to thwart a particular rule against indemnity: ". . . the use of a legal device, proper in its setting, should not be extended to a situation foreign to its nature for the purpose of thwarting the decisions of the courts." (95 U. of Pa. L. Rev. 234.)

In reaching the conclusion we have we do not overlook *Hoffine v. Standard Accident Ins. Co.*, 191 Kan. 63, 379 P. 2d 246. There, as pointed out by counsel for appellee State Farm, resort to the abstract reveals that a loan agreement figured in the transaction. However, the issues crucial to the case at bar were never presented to or decided by this court and *Hoffine* provides no precedent.

In its finding No. 5 the trial court found that by refusing to contribute to a full and complete settlement appellant was estopped to attack or to claim any benefit from the terms of the loan receipt. We are cited to no principle of law supporting this conclusion and we know of none. Appellant has consistently disclaimed liability for the unfortunate incident. It has never done, said or concealed anything causing anyone to change position to his detriment, much less has it been guilty of misrepresentation or any other unfair conduct. The trial court erred in this conclusion (see *Place v. Place*, 207 Kan. 734, Syl. ¶ 4, 486 P. 2d 1354).

Finally, appellant urges the trial court erred in dismissing State Farm as an involuntary plaintiff in the action. It argues State Farm is a "contingently necessary" person as defined in K. S. A. 1972 Supp. 60-219(*a*), recently amended to bring our rule on compulsory joinder of persons in conformity with Federal Rule 19. In view of the conclusion herein reached respecting the status of the document in question, State Farm as the convenantee in a covenant not to sue manifestly does not fall within the ambit of 60-219(*a*) which provides:

"A person is contingently necessary if (1) complete relief cannot be accorded in his absence among those already parties, or (2) he claims an interest relating to the property or transaction which is the subject of the action and

he is so situated that the disposition of the action in his absence may (*i*) as a practical matter substantially impair or impede his ability to protect that interest or (*ii*) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

The action can be fairly managed with all interests protected without the presence of State Farm as an involuntary plaintiff.

That part of the judgment denying appellant's motion to dismiss is affirmed; that part denying appellant's alternative motion for credit *pro tanto* is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

APPROVED BY THE COURT.