No. 47,784

AMERICAN STATES INSURANCE CO., *Appellee*, v. HARTFORD ACCIDENT AND INDEMNITY CO., *Appellant*, PIONEER TOWNSHIP, RUSH COUNTY, KANSAS, and PLEASANTDALE TOWNSHIP, RUSH COUNTY, KANSAS, *Appellees*, v. HARTFORD ACCIDENT AND INDEMNITY CO., (*Appellant*) and BEN F. SCHEUERMAN d/b/a OTIS REALTY INSURANCE AGENCY; *Appellant*, (Hartford Only); GREAT AMERICAN INSURANCE COMPANY, *Intervenor*.

(545 P. 2d 399)

Opinion filed January 24, 1976.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Charles E. Cole, Jr.,* of the same firm was with him on the brief for the appellant.

*Raymond L. Dahlberg,* of Turner and Hensley, Chartered, of Great Bend, argued the cause, and *Lee Turner,* of the same firm, and *Thomas C. Boone,* of Hays, were with him on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: This is a consolidated action in which the plaintiffs, American States Insurance Company (American States), and the Townships of Pioneer and Pleasantdale, Rush County, Kansas (the Townships), on their own behalf and on behalf of American Fidelity Insurance Company (American Fidelity), seek to recover from the defendant, Hartford Accident and Indemnity Company (Hartford), the costs of settling and defending a personal injury lawsuit in which defendant denied coverage and refused to defend. Defendant Hartford appeals from the judgment of the trial court requiring it to contribute an equal share of the costs of defense and settlement. From a complicated set of facts, questions are raised as to the application of equitable contribution ordered by the trial court, the validity and effect of a subrogation agreement, and the right to recover attorney fees. Appeal is also brought from the order of the trial court denying the motion for intervention filed by Great American Insurance Company (Great American).

This litigation arose out of personal injuries suffered as a result of a grass fire in the City of Otis, Kansas, on March 26, 1968. The fire was started and supervised by the men of the Otis Fire Department in an effort to burn off the grass and weeds on the athletic field adjacent to Otis High School. The Townships of Pioneer and Pleasantdale maintained a volunteer fire department for their mutual protection and they owned a fire truck which was utilized

in fighting the fire on that day. At the request of the school principal several high school students attempted to help the firemen keep the blaze under control. Shortly after the fire was started the wind picked up and the fire blew out of control. The Townships' fire truck had been driven into a dangerous position in the field, directly in the line of the oncoming fire. Two of the students, Charles Menzer, Jr., and Michael Bahr, were hanging on to the rear of the fire truck moments before they were injured by the fire. Bahr was permanently scarred by burns he received and Menzer suffered severe burns which ultimately led to his death.

Suit was subsequently brought in Rush County, Kansas, by Bahr for the injuries sustained, and on behalf of Menzer for wrongful death, against the Townships, various teachers and employees of the school system, two individual firemen, and the driver of the Townships' fire truck. Each of the named defendants in the action sought to have its respective insurer defend the suit and otherwise act on its behalf. Accordingly, American Fidelity represented the teachers and other school employees under the provisions of a liability policy; American States represented the two firemen, Lester Stieben and Rudolph Dumler, under separate homeowners' policies; and Great American represented the Townships' fire truck driver, Harry Schneider, under a homeowner's policy. The Townships requested Hartford to represent and defend them in the Rush County action under the provisions of an automobile liability policy issued by Hartford on the fire truck owned and operated by the Townships. The terms of the policy provided for coverage to the following extent:

"I. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

The policy contained the following exception:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Automobile Medical Payments with respect to any automobile does not apply to bodily injury, sickness, disease or death sustained by any volunteer fireman or volunteer worker of an insured named in the policy, while engaged in the operation or maintenance of the automobile or arising out of or in the course of his duties or other activities as a volunteer fireman or volunteer worker participating in rescue squad or ambulance corps operations."

After conducting an investigation into the matter, Hartford

concluded the losses claimed were not covered by its policy on the fire truck. Hartford consequently refused to represent and defend the Townships in the Rush County action, basing its refusal on the grounds the injuries received by Bahr and Menzer did not arise out of the "ownership, maintenance or use" of the fire truck and that the injured students were "volunteer firemen" so as to fall within the exclusion contained in its policy.

Despite Hartford's refusal to represent the Townships, a settlement was reached in the Rush County action prior to trial. According to the settlement agreement, American States paid the sum of $6,600.00, Pioneer Township paid $100.00, Pleasantdale Township paid $100.00, American Fidelity paid $5,900.00, and Great American paid $6,600.00. In an apparent attempt to effectuate the settlement, the Townships and American Fidelity entered into a separate subrogation of rights agreement. While American Fidelity recognized a duty to defend its own insureds, i. e., the teachers and other school employees, it took the position that any liability on its part was secondary to the liability incurred by the Townships on account of the acts of the Townships' agents and employees. Acting upon such theory, the subrogation agreement included a provision wherein the Townships acknowledged that if they were found to be liable in the matter their liability would be primary and any liability on behalf of American Fidelity's insureds would be secondary. The agreement specifically provided that American Fidelity would pay $5,900.00 on behalf of the Townships for the purpose of settlement, and to the extent of such payment the Townships assigned to American Fidelity any and all rights which the Townships might have against any person or persons, including any insurance carrier of the Townships. The agreement further authorized American Fidelity to take any action in law or equity in its own name or in the name of the Townships to enforce those rights.

Thereafter, plaintiffs American States and the Townships filed actions in the trial court against defendant Hartford. The action instituted by American States asserted that it insured two of the firemen employed by the City of Otis and involved in fighting the fire under a homeowner's policy which it claimed was secondary insurance, and that the firemen were also insured under a Hartford policy that provided their primary coverage. American States further alleged that as a result of Hartford's refusal to defend the individual firemen it expended funds in settlement and defense of the suit which should have been paid under the terms of Hartford's policy. American States claimed that although it had paid

the settlement, it denied the fact of coverage and executed a reservation of rights document with its insureds. As a result, American States prayed for judgment in the amount of $9,999.99. Hartford answered by denying that demand was made upon it by American States or its insureds or that it had coverage for any of the defendants in the Rush County action.

The plaintiff Townships also brought suit against Hartford to recover settlement and defense costs contributed by both Townships and American Fidelity. The Townships alleged their fire truck was covered under a policy of insurance issued by Hartford and that under the terms of the policy they were insured against liability for any negligence of their agents, servants or employees, and were entitled to a defense in the personal injury action. As a result of Hartford's refusal to defend, the Townships alleged they were required to spend monies in defense and settlement of the action. They prayed for damages in the amount of $5,900.00, which was the amount American Fidelity paid in settlement, plus attorney fees of $9,868.38. Hartford filed a timely answer denying there was any coverage for the injuries suffered.

The actions were consolidated for trial and submitted to the trial court upon the parties' stipulations, depositions, and exhibits. The stipulations submitted by the parties delineated the issues for determination by the court to be whether the plaintiffs Townships and American States could maintain the actions, whether the Hartford policy provided coverage to the Townships and the firemen, whether the plaintiffs were entitled to attorney fees for prosecution of the instant action, and the appropriate amount of recovery.

After reviewing the evidence, the trial court emphasized there could be more than one proximate cause and found the injuries to the students were in part the proximate and direct result of the "use" of the fire truck owned by the Townships and driven by Harry Schneider. The court further found the injured students were not engaged in the operation or maintenance of the truck; hence, they did not fall within Hartford's exclusionary clause which excluded coverage for injuries received by volunteer firemen. The court also ruled that the negligent driving of the fire truck with the high school students mounted on the corners thereof, downwind in a high wind in close proximity to an out-of-control weed and grass fire, was also a proximate cause of the injuries. Any negligence of the individual firemen that was a proximate cause of the injuries, the court said, could not have been in the operation and

use of the fire truck, but was due to negligence in permitting the inexperienced students to fight the fire in a high wind without proper supervision. The court felt that American Fidelity's conduct in contributing to the settlement of the Rush County action was in recognition that negligent acts of its insureds, the teachers and other school employees, could be a proximate cause of the bodily injuries.

On the basis of its findings, the court concluded Hartford unjustly denied coverage and wrongfully refused to defend its insureds, the Townships and the fire truck driver, Schneider. Hartford was found to be liable for a pro-rata share of the amount spent by plaintiffs in settlement of the Rush County action, including attorney fees. Great American was not a party and the amount it paid was not involved in this action.

Thereafter, Hartford filed a notice of appeal to this court. Great American filed a motion nine days later to intervene in the trial court, asserting that it was subrogated to the rights of the fire truck driver by virtue of a payment under its policy of insurance. The trial court refused to stay the appeal, concluding the determination of the alleged subrogation rights of Great American was not essential to the appeal and also that the motion to intervene was filed out of time.

Although Hartford stated in its initial statement of points that the trial court erred when it ruled the injury to the Rush County plaintiffs was proximately caused by the "use" of the Townships' fire truck, it has since abandoned that position and requests that we decide the case in its favor despite the fact it provided insurance coverage on the fire truck and wrongfully refused to defend on behalf of the Townships.

Hartford first argues the court erred in applying the doctrine of equitable contribution to the facts of the case. The plaintiffs concede that contribution among joint tortfeasors would be impermissible under the circumstances, but they insist the instant actions were brought for breach of contract and the trial court treated them as breach of contract actions.

After close examination of the pleadings of the parties to this appeal we conclude both actions were brought to recover from Hartford for wrongfully refusing to defend the Rush County action. The petition filed by American States was based on the theory Hartford was the primary insurer and wrongfully denied coverage. It sought indemnification for substantially all the funds expended

in defense and settlement of the Rush County action. Similarly, the petition filed by the Townships alleged Hartford wrongfully refused to defend under its policy insuring the fire truck, and claimed reimbursement for all monies paid. No claim was made for recovery on the theory of equitable contribution or a sharing of the losses incurred based on equitable principles.

Despite the fact the petitions were framed in terms of breach of contract, it is apparent from the court's findings that it characterized the proceedings as actions by two insurance companies against a third, seeking equitable contribution to the settlement of the Rush County action. The language of the court in its finding No. 7 is illustrative of its approach:

"The actions herein, namely case No. 15,478 and No. 15,526, are essentially actions seeking equitable contributions to the settlement and final disposition of the Rush County case between three insurance companies, namely: American States Insurance Co., American Fidelity Insurance Co., and the defendant Hartford Accident and Indemnity Co. This is an equity action and equitable rules and principles apply."

And in its finding No. 8, the court reasoned:

"The defendant Hartford A. & I. Co., in equity, should not be permitted self enrichment by its wrongful denial of coverage and refusal to defend, and should be required to contribute its just share toward the expense of settlement of the Rush County case."

In findings Nos. 9 and 10, the court concluded the remedy of equitable contribution was appropriate under the circumstances and it proceeded to divide the total costs of settlement and disposition of the Rush County action equally among the three insurance companies, stating:

"This legal advantage and unjust enrichment require the equitable remedy of just and equitable contribution by Hartford A. & I. Co. to the amicable settlement of the Rush County case by means of appropriate judgments herein. . . .

"In determining the equitable and proper contributions to the settlement of the Rush County case, the Court finds there were generally three classifications of respondents-defendants to the claims therein, . . .

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The Court finds that, in equity, the expense of settlement and final disposition of the Rush County case, including contributions and court costs, should be divided equally three ways to the three insurance companies, the total being $27,043.99 (see finding 6 above) and a one-third share being $9,014.66."

It is not clear on what basis the trial court characterized the actions as being appropriate for contribution. In applying the

doctrine of equitable contribution, it would appear the court was under the impression the rule against contribution between joint tortfeasors was inapplicable because the Rush County action was settled short of trial. In its finding No. 7, the court stated:

"This is not an action between joint tort feasors. The Rush County case was not tried on the facts and no findings of fault were made in that case, which was dismissed with prejudice after amicable settlement. . . ."

We believe the court erred in concluding the defendants in the Rush County action could not be joint tortfeasors solely because there had been no determination of fault in that action. Such a result is contrary to the approach taken by this court in *Cullen v. Atchison, T. & S. F. Rly. Co.,* 211 Kan. 368, 507 P. 2d 353. In that case a passenger of an automobile was killed in a collision with a train due to the alleged negligence of both the driver of the vehicle and the operator of the train. A settlement agreement was subsequently entered into by the heirs of the deceased passenger and the liability insurance carrier of the automobile driver. The agreement provided for advancement of funds in the nature of a loan, and required the heirs to bring suit against the railroad and repay the loan from any recovery obtained. Pursuant to the terms of the settlement agreement the heirs of the decedent brought a wrongful death action against the railroad. The railroad moved to dismiss the suit on the ground, among others, that the settlement agreement could not be given its full effect since it and the driver of the automobile were joint tortfeasors, and to enforce the agreement according to its terms would thwart the rule against contribution between joint tortfeasors. The trial court denied the motion. On interlocutory appeal to this court we relied on the allegations of the pleadings and overruled the findings of the trial court that the parties could not be joint tortfeasors. We reached this conclusion in *Cullen,* despite the fact the issue of negligence had not been tried on the facts and no findings of fault had been made at that stage in the proceedings. We said:

"In the case at bar both appellant [railroad] and LaFrance [automobile driver] are alleged to have been negligent in causing the Cullen death, LaFrance with respect to the handling of his vehicle and appellant in the operation of its train, which acts occurred substantially concurrently. Hence, at this stage of the lawsuit, they must be regarded as joint tortfeasors and the trial court erred in ruling otherwise. . . ." (p. 375.)

Similarly, in this case the Rush County defendants are properly viewed as joint tortfeasors despite the fact there has been no ex-

press judicial determination to that effect. Where substantially concurrent acts of negligence of two or more persons contributed to the injury, the degree of culpability is immaterial and each is liable for the entire damage. (*Tilden v. Ash*, 145 Kan. 909, 67 P. 2d 614.) It is clear from the record that the Rush County defendants were charged with negligence in contributing to the injuries suffered. Consistent with the joint negligence of the parties is the fact they all joined in the out-of-court settlement prior to trial. The trial court emphasized there may be more than one proximate cause of the injuries. It specifically found from a preponderance of the evidence that the injuries were a proximate result of the "use" of the Townships' fire truck and the negligent driving of Schneider. It also determined that the negligent acts of the firemen and teachers could be a proximate cause of the injuries. Under these circumstances, the trial court's reliance upon the absence of a formal determination of liability of the Rush County defendants was erroneous. Applying the rationale expressed in *Cullen,* the defendants were joint tortfeasors at the time of settlement and must be so regarded for purposes of this action.

The insurers, who appear as plaintiffs in this action, can stand in no better position than their insureds, and where contribution is improper among the insureds it must also be improper as between their insurers. (16 Couch on Insurance 2d, § 62:171, p. 577.) Accordingly, the rule in this state prohibiting contribution among joint tortfeasors would operate to prevent the application of the doctrine of equitable contribution unless it could be shown that there was a coinsurer relationship between the insurers. (*Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P. 2d 783; *Rucker v. Allendorph,* 102 Kan. 771, 172 Pac. 524.)

The doctrine of equitable contribution has long been recognized by this court as a remedy available to one who is compelled to bear more than his fair share of a common burden or liability to recover from the others their ratable proportion of the amount paid by him. (*Bituminous Casualty Corporation v. American Fire & Casualty Co.,* 192 Kan. 233, 387 P. 2d 159.) It is a principle of equity applicable only where the situations of the parties are equal under a common liability or burden. (18 Am. Jur. 2d, Contribution, § 1, p. 6.) Between insurers, it is generally a prerequisite to enforcing contribution that their policies insure the same interests. (*New Hampshire Ins. Co. v. American Employers Ins. Co.,* 208 Kan.

532, 492 P. 2d 1322; 16 Couch on Insurance 2d, § 62:161, p. 570.)

In the instant case the parties who were awarded contribution did not share a common burden or obligation. The record clearly discloses that as of the date of the fire Hartford, American Fidelity, and American States, insured separate and distinct interests. Hartford's policy extended coverage to the Townships and all those using and operating the fire truck. Hartford argues that coinsurance was a possibility inasmuch as the insureds under either the American States or the American Fidelity policies could have become insureds under the Hartford policy by virtue of their use of the fire truck. Hartford further argues that notwithstanding this possibility the potential for coinsurance was never realized. The trial court negated the possibility of coinsurance by finding that any negligence on the part of the firemen could not have been in the operation and use of the fire truck, but only in the negligence in supervision of the high school students. Similarly, it is clear from the record that the negligence of the teachers could not have been in the operation and use of the fire truck. Under these circumstances, we conclude the three named insurers insured separate interests and there was no relationship that could be relied upon to base an award of contribution. We must agree with defendant Hartford that the trial court erred in applying the doctrine of equitable contribution and the judgment of the trial court in this respect must be set aside.

Having concluded the trial court improperly awarded contribution, it remains to be determined whether any remedy is available to the plaintiffs. Where, as here, the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such a situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine de novo what the facts establish. (*Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, 470 P. 2d 756; *In re Estate of Bernatzki,* 204 Kan. 131, 460 P. 2d 527.) We shall examine each of the actions separately on the basis of the record and in light of the findings of the trial court.

Before reaching the merits of the controversy, mention should be made of Great American's motion to intervene in the original action. The record reveals that the motion was filed after final judgment was rendered and for that reason it was overruled by the

trial court. Whether a motion to intervene is allowed is normally a matter of judicial discretion. (K. S. A. 1975 Supp. 60-224 [a].) It depends upon the concurrence of three factors: (1) Timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests. (*Hukle v. City of Kansas City*, 212 Kan. 627, 512 P. 2d 457.) Hartford argues that since the trial court found the driver of the fire truck was an insured under its policy, it will be required to reimburse Great American for its payment toward the Rush County settlement. Although Hartford does not object to that payment, it complains that when combined with the trial court's award of contribution in this case it will subject Hartford to double liability. The reasoning of Hartford is best illustrated by its own statement:

"There is no question under the trial court's findings, that Hartford will be required to repay Great American. If contribution is proper and Hartford should have contributed to the settlement in the first instance, the proper result would have been to require Hartford to step into the shoes of Great American which did in fact do those things at the beginning. By imposing contribution among Hartford, American Fidelity and American Family [*sic*] [States], and at the same time rendering Hartford subject to liability to Great American for almost an equal amount, is to make Hartford contribute twice. If equity is to be done, Great American's claim should be brought in, added to the aggregate, and a division made accordingly."

In view of our determination that an award of contribution was improper it would no longer appear to be necessary for Great American to be brought in as a party to this action. We understand from oral argument that suit by Great American is now pending to recover from Hartford the amount it paid in settlement of the Rush County action. Not being at issue in the present case, we express no opinion as to the merits of that litigation. We cannot say the trial court abused its discretion by denying Great American's motion to intervene.

As to the claim of American States, which insured the two firemen under a homeowner's policy, the question is whether the firemen were also insureds under the Hartford policy. In its petition, American States alleged it had secondary coverage of the firemen, whereas, Hartford had primary coverage. Thus, it was the contention of American States that Hartford owed a duty to defend the firemen as well.

In order for the two firemen to be covered by Hartford's policy on the Townships' fire truck it was necessary to establish that the firemen's negligence arose out of the "ownership, maintenance or

use" of the truck. In this regard there is no conflict in the record. The trial court specifically found that any negligence on the part of the two firemen could not have been in the operation and use of the truck, but arose from the negligent supervision of the students. Accordingly, we hold the action brought by American States against Hartford for wrongful refusal to defend is without merit, and its claim for recovery of amounts expended in defense and settlement of the action is denied.

The action commenced by the Townships on their own behalf, and on behalf of American Fidelity, sought recovery for the full amount paid by American Fidelity in settlement and defense of the Rush County action. Since no claim is made by American Fidelity that their insureds, the school teachers, were insured under the Hartford policy, their right to recover depends solely upon the validity of the subrogation agreement entered into with the Townships. That agreement provided for assignment by the Townships of all rights they might have against Hartford arising out of the Rush County action. It reads in part as follows:

"WHEREAS, all the parties to the law suit desire to make an amicable settlement of the pending claims to avoid further exposure and in order to protect their interests each of these parties deem it advisable to negotiate an amicable settlement with the above named plaintiffs; and

"WHEREAS, it is acknowledged by the said Pioneer and Pleasantdale Townships that if they are found liable in the above stated matter that their liability would be primary and any liability on behalf of Jim Collins, Joel Bieber, Richard Connell, Caroline Ohnmacht, Hazel Josserand Stos and George Winter would be secondary liability, it is hereby agreed that in consideration of the payment of the sum of $5,900.00 by American Fidelity Insurance Company on behalf of the said townships and to the extent of said payment the townships hereby subrogate and assign to said American Fidelity Insurance Company all rights which the townships may have against any person or persons, including any insurance carrier of said townships, arising out of the law suit mentioned above and for the enforcement of such rights said American Fidelity Insurance Company is hereby authorized to take any action which may be necessary either in law or equity in its own name or in that of the townships and to likewise compromise or settle and to execute and sign releases and acquitances and endorse checks or drafts given in settlement of such claims in the names of the townships with the same force and effect as if the townships had executed or endorsed them."

Although the trial court held the subrogation agreement to be valid and enforceable, we agree with Hartford's comparison of the instant document with that relied on in *Cullen v. Achison, T. & S. F. Rly. Co.,* supra. In *Cullen* we held that an assignment of

rights agreement, styled a "loan receipt", was ineffective to confer a right of contribution among joint tortfeasors. We said:

". . . Kansas has always adhered to the rule that there is no contribution between joint tortfeasors (*Alseike v. Miller*, 196 Kan. 547, 412 P. 2d 1007). Where the question of contribution between tortfeasors is involved courts will look to the substance of the transaction, not its form (18 Am. Jur. 2d, Contribution, § 33). Contribution may be said to be involved here by reason of the loan receipt and to that extent the rule prohibiting it would be frustrated and, accordingly, the agreement must be held ineffective to confer upon appellee State Farm a right to contribution from appellant." (p. 375.)

The evident purpose of the loan receipt in *Cullen* was to permit one joint tortfeasor to avoid its joint and several liability by shifting responsibility to a second tortfeasor. American Fidelity seeks to achieve the same result by way of the subrogation agreement. To permit the insurer of a joint tortfeasor to enter into such an agreement and thereby recover from the insurer of another joint tortfeasor would thwart the rule against contribution among joint tortfeasors. Although American Fidelity claims to have paid the $5,900.00 in settlement on behalf of the Townships, the undisputed facts indicate American Fidelity was under a pre-existing duty to represent its insureds and that any contribution by it to the settlement was on behalf of its insureds. We cannot honor the subrogation agreement under these circumstances. The claim of American Fidelity to the costs of settlement and defense of the Rush County action is denied.

Hartford concedes responsibility to the Townships for the $200.00 advanced by them toward the settlement. No argument is made that the Townships suffered any other loss by reason of Hartford's refusal to defend. It follows that the Townships should have judgment for the $200.00. Under K. S. A. 40-256, when judgment is rendered in an action on an insurance policy the insured may also recover a reasonable attorney fee if the insurance company refused "without just cause or excuse" to pay the loss. The trial court found that Hartford refused without just cause or excuse to pay the loss represented by the judgments entered, and found the plaintiffs in each of the consolidated cases should recover attorney fees of $2,000.00. Since we have determined American States and American Fidelity cannot prevail in this action it follows they are not entitled to recover attorney fees. The Townships' claim for attorney fees remains and we see no reason the trial court's judgment in their favor in the sum of $2,000.00 should not be affirmed. Hartford makes several arguments against allowance of attorney

fees, but we have difficulty finding merit in them since Hartford now admits there was coverage. Coverage required Hartford not only to defend, but also to participate in and contribute to any agreed settlement. To clarify the foregoing we direct judgment in favor of Pioneer Township, Rush County, Kansas, for $100.00 and for attorney fees in the sum of $1,000.00, and direct judgment in favor of Pleasantdale Township, Rush County, Kansas, for $100.00 and for attorney fees in the sum of $1,000.00, and for costs.

Affirmed in part and reversed in part.